UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA

    Plaintiff,

vs.

REAL PROPERTY KNOWN AS
4775 COLLINS AVENUE, UNIT 3606
MIAMI BEACH, FLORIDA 33140

    Defendant.
_____/

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States files this Verified Complaint for Forfeiture *In Rem* and alleges that:

1. This is a civil action for forfeiture *in rem* against the above piece of real estate, known as 4775 Collins Avenue, Unit 3606, Miami Beach, Florida 33140 (hereinafter "the defendant property") including their appurtenances and improvements thereon, located in the Southern District of Florida in Miami-Dade County.

2. This Court has subject matter jurisdiction over this action pursuant to Title 28, U.S.C. §§ 1345 and 1355(a) and (b), and Title 18, U.S.C. § 981(a)(1)(A) and (C).

3. This Court has venue within this judicial district pursuant to Title 28, United States Code, Section 1355(b)(1). The defendant named property shall be restrained or seized pursuant to an order issued by this Court served by agents working for Immigration and Customs Enforcement, Homeland Security Investigations. The real property thereby will be within the jurisdiction of this

Court during the pendency of this action.

4. The defendant property has not been seized but is located within this district and within the jurisdiction of the Court. The United States does not request authority from the Court to seize the real property defendant at this time. The United States will, as provided by Title 18, U.S.C. § 985(b)(1) and (c)(1):

(a) Post notice of this action and a copy of the Complaint on, the defendant real property;

(b) Serve notice of this action on the defendant real property owners, and any other person or entity who may claim an interest in the defendant, along with a copy of this Complaint;

(c) File a *lis pendens* in county records of the defendant real property's status as a defendant in this *in rem* action; and

(d) Publish notice of action as required by statute and applicable rules.

The United States will also appraise the defendant real property.

5. The defendant property is forfeitable pursuant to Title 18, U.S.C. § 981(a)(1)(A) because it represents property involved in transactions or attempted transactions in violation of Sections 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), 1956(h) and 1957 of Title 18, United States Code, or are traceable to property involved in such transactions. Also the defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because the relevant asset is real property, which constitutes or is derived from proceeds traceable to a violation of offenses constituting "specified unlawful activity" as defined in section 1956(c)(7)(A), or a conspiracy to commit such offenses, to wit, an offense which is indictable under Title 18, U.S.C . § 1344, namely, Bank Fraud.

6. The defendant property, which is either the proceeds of, property involved in, or property traceable to the proceeds of violations of U.S. law, as set forth herein, is more particularly described as follows:

> Unit 3606 of Green Diamond Condominium, a Condominium, according to the Declaration thereof, recorded in O.R. Book 19089, Page 1937, of the Public Records of Miami Dade County, Florida, together with an undivided interest in the common elements appurtenant thereto and all amendments thereto as set forth in said declaration.

7. The defendant property is currently owned by Clara E. Garcia. The relationship between Clara E. Garcia and Ricardo Amador Ballester Garcia is unknown at this time. On October 27, 2014, a Quit Claim Deed was recorded with the Clerk of Courts for Miami Dade County, conveying interest in the property from Ivan Pita, using alias Juan Carlos Perez and Zenda Lissette Ballester Garcia to Clara E. Garcia.

## BANK FRAUD SCHEME IN GENERAL

8. On or about August 28, 2003, in Dade County, in the Southern District of Florida, and elsewhere, the defendant Ricardo Amador Ballester Garcia a.k.a Alejandro Alvarez Abreu (herein after referred to as Ballester) did knowingly, and with the intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including BAC Florida Bank, which scheme and artifice employed a material falsehood, and did knowingly, with the intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of one or more said financial institutions by means of false and fraudulent pretenses,

-3-

representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2).

9. Ricardo Amador Ballester, an individual who resided in Miami-Dade County, Florida.

10. Ballester applied and received a driver's license from the State of Florida, Department of Highway Safety and Motor Vehicles under the name Ricardo Amador Ballester. The driver's license listed the Country of Birth as Cuba and reflected a date of birth 08/14/1964. Ballester also applied and received a driver's license from the State of Florida under the name Alejandro Alvarez Abreu, date of birth 8/14/60 and bearing driver's license number A160-001-60-294-0.

11. Ballester, an individual also known as Alejandro Alvarez Abreu applied and received a Passport from Spain in the name of Alejandro Alvarez Abreu, passport #AA137030, dated 6/10/03 and with an expiration date of 6/10/2013.

12. Ivan Pita Gonzalez, an individual also known as Juan Carlos Perez, was born in Havana, Cuba during 1964. The name recorded on Gonzalez Cuban birth certificate is "Ivan Pita Gonzalez. On or about June 14, 1989, Gonzalez applied for and received a Florida driver's license in the name of Ivan Pita. Since then, the state of Florida has issued Gonzalez a driver's license on a number of occasions. On September 3, 2010, Gonzalez was issued another Florida driver's license in the name of Ivan Pita Gonzalez.

13. BAC Florida Bank was a financial institution with offices located throughout the United States, including the State of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC".)

14. World Savings Bank, FSB was a financial institution with offices located throughout the United States, including the State of Florida, whose accounts were insured by the FDIC.

15. First National Bank of Arizona ("First National Bank") was a financial institution with offices located in the United States. First National Bank's accounts were insured by the FDIC.

16. The term "closing" refers to the legal event at which the transfers of an interest in real estate from seller to buyer formally took place, as well as the point at which funds were transferred between the various parties, such as from the lending institution to the buyer or to the seller on the buyer's behalf, which transfer was often accomplished by temporarily passing the funds through an intermediary referred as to a "closing agent" or "title company."

17. The term "mortgage" is used in the real estate industry to refer to a loan to finance the purchase of real estate property, usually with specified payment period and interest rates, in which the borrower/mortgagor gave the lender/mortgagee a lien on the property as collateral for the loan.

18. The term "lenders" refers collectively to the mortgage lenders set forth in the preceding paragraphs, each of which extended mortgage loans and disbursed mortgage loan proceeds to fund the financing of residential properties in the State of Florida.

19. A HUD-1 Settlement Statement is a standard form required to be executed for the closing of all real estate transactions. The HUD-1 Statement itemized all aspects of the closing for the lender, including payments made by the borrower, money due to the seller, and any fees paid to third parties in connection with the closing.

## PURPOSE OF THE SCHEME AND ARTIFICE

20. It was the purpose of the conspiracy for the defendants to unlawfully enrich themselves by, among other things, submitting false and fraudulent mortgage loan applications and related closing documents to one or more financial institutions for the purpose of obtaining and maintaining ownership and control of certain residential properties located in Miami-Dade County

and for the purpose of receiving the proceeds from fraudulently obtained mortgage loans for the defendant's personal use and benefit.

## SCHEME TO DEFRAUD INVOLVING BALLESTER

21. On or about August 28, 2003, Ricardo Amador Ballester Garcia purchased real property located at 4775 Collins Avenue, Unit 3606, Miami Beach, Florida, for $435,000.00. Ballester purchased this property using the name "Alejandro Alvarez Abreu." To finance the purchase of the property, Ballester borrowed $348,000.00 in the name "Alejandro Alvarez Abreu" from BAC Florida Bank.

22. On or about September 22, 2004, Ricardo Amador Ballester Garcia obtained a line of credit of $100,000.00 from World Savings Bank using as collateral the property located at 18051 SW 158th Street, Miami, Florida. Ballester obtained the line of credit using the name "Alejandro Alvarez Abreu."

23. On October 5, 2005, Ricardo Amador Ballester Garcia and Ivan Pita Gonzalez signed a Residential Sale and Purchase Contract for the sale of 4775 Collins Avenue, Unit 3606, Miami Beach, Florida, for the sum of $604,000.00. Ballester signed the contract using the name "Alejandro Alvarez Abreu" as the "Seller" of the property. Gonzalez signed the contract using the name "Juan Carlos Perez" as the "Buyer" of the property. As part of the sale transaction, Gonzalez signed a Uniform Residential Loan Application to obtain a $422,800.00 loan from First National Bank of Arizona. In the loan application Gonzalez listed his address as Avenida Dali #12, Olivia Valencia, Espana, a property that Gonzalez allegedly owned.

24. Gonzalez also listed that he was self-employed as a general contractor/investor and reported a monthly income of $44,711.39, assets valued at $5,727,726.00, and $3,328.01 in monthly

liabilities. The application also listed that title to the property would be held in the names of Juan Carlos Perez and Zenda Lissette Ballester Garcia as tenants in common.

25. According to the HUD-1 Settlement Statement, the purchase transaction closed on December 29, 2005. The HUD-1 also lists First American Exchange Company, LLC a business that assists investors with tax-deferred exchange transactions under Section 1031 of the Internal Revenue Code, as intermediary for Ballester. As a result of the sale, Ballester used the proceeds to pay off the existing mortgage on the property and to receive cash payment of $175,980.67.

26. A review of the closing agent's file and bank records show that the buyer's funds to close the transaction originated from an HSBC account in the name of Juan Carlos Perez-Martinez. The account received a wire transfer in the amount of $497,897.00 from Caja de Ahorres del Mediterranc (Spain) on September 9, 2005.

27. On December 29, 2005, Ivan Pita Gonzalez signed a Uniform Residential Loan Application to obtain a $422,800 loan for the purchase of 4775 Collins Avenue, Unit 3606, Miami Beach, Florida. Gonzalez signed the application, which was provided to First National Bank as part of the closing process, using the name "Juan Carlos Perez" and he provided a false date of birth on the application. Gonzalez falsely represented on the application that he earned $44,711.39 a month as a General Contractor/Investor and that he was not a permanent legal resident of the United States. Gonzalez also failed to disclose to First National Bank, on the loan application or otherwise, that he had borrowed $945,000.00 to buy 18051 SW 158th Street, Miami, Florida from "Alejandro Alvarez Abreu" the day before.

28. On December 29, 2005, the sale of 4775 Collins Avenue, Unit 3606, Miami Beach, Florida, was completed at the law firm that closed the sale transaction for 18051 SW 158th Street,

Miami, Florida, the day before. The HUD-1 Settlement Statement, which was provided to First National Bank as part of the closing process, reflected that Ricardo Amador Ballester Garcia sold the property to Ivan Pita Gonzalez for $604,000.00, which was funded, in part, with a loan of $422,800 from First National Bank. Ballester and Gonzalez signed the HUD-1 Settlement Statement and completed the transaction using the names "Alejandro Alvarez Abreu" and "Juan Carlos Perez." The HUD-1 Settlement Statement reflects Ballester used the proceeds from the transaction to pay off the mortgage on the property located at 4775 Collins Avenue, Unit 3606, Miami Beach, Florida, and to receive a cash payment of $175,980.67.

29. As part of the closing for the sale of 4775 Collins Avenue, Unit 3606, Miami Beach, Florida, Ivan Pita Gonzalez signed several forms certifying to First National Bank that his name was "Juan Carlos Perez." At no time did either Ricardo Amador Ballester Garcia or Ivan Pita Gonzalez disclose to First National Bank that they were engaged in a sales transaction using fictitious identities and that other information provided to the lender such as Gonzalez's alleged monthly income was false.

30. Following the purchase transaction, records reveal that on April 16, 2008, a quit claim deed (QCD) was recorded with the Clerk of Courts for Miami Dade County, Florida conveying interest in the property from Juan Carlos Perez to Juan Carlos Perez and Zenda Lissette Ballester Garcia, husband and wife. Zenda Lissette Ballester Garcia is the sister of Ballester.

31. On June 5, 2012, Aurora Bank FSB filed a lis pen dens concerning a foreclosure action on the mortgage obtained by Gonzalez in the name of Juan Carlos Perez for the purchase of 4775 Collins Avenue, Unit 3606. On October 24, 2014, an order for dismissal for lack of service was entered in the foreclosure action related to the lis pen dens file on June 5, 2012.

32. On October 27, 2014, another quit claim deed recorded with the Clerk of Courts for Miami Dade County, Florida conveying interest in the property from Juan Carlos Perez and Zenda Lissette Ballester Garcia to Clara E. Garcia. The quit claim deed was dated on January 1, 2014 and was notarized on April 29, 2014. The notary seal on the document listed the notary as Ana Fleitas.

33. On November 10, 2014, Special Agents assigned to HSI SAC Miami interviewed Ana Fleitas. Fleitas stated that she had been a notary for many years and that she always records the identification number for individuals that come to her to obtain notary services, in cases where the individual is not personally known to her. Agents presented Fleitas with a recorded copy of the notarized quit claim deed. Fleitas confirmed the notary stamp on the document as her own, but that the signature and handwriting in the notary acknowledgement and endorsement section of the document had not been written or signed by her. Fleitas was adamant that the signature displayed on the document was not her and the handwriting used to fill in the date and specify the identification that was produced by the individuals seeking the notary endorsement had not been written by her.

34. Fleitas was aware of what a quit claim deed was, but stated that she could not remember if she had ever notarized this type of document. Fleitas could not remember if she had ever notarized a document for someone who produced a passport for identification. At the time of the interview, Fleitas was in possession of her current and recently expired notary stamps.

## VIOLATIONS OF UNITED STATES LAW

35. From on or about August 28, 2003 to December 29, 2005, Ballester recruited and caused to be recruited a straw buyer, to as a qualifying mortgage applicant in order to fraudulently purchase and finance the property located at 4775 Collins Avenue, Unit 3606, Miami Beach, Florida.

36.     Ballester and his co-conspirators prepared, and caused to be prepared, false and fraudulent mortgage loan applications and other related documents. The loan applications and related documents, which were submitted to lenders, contained numerous false statements and representations relating to staw buyer, an unqualified buyer income, other loan applications, and other information necessary for lenders to assess the straw buyer's and unqualified buyer's qualifications to borrow money. The false and fraudulent documents were used to induce the lenders to fund mortgage loans to purchase and finance the property located at 4775 Collins Avenue, Unit 3606, Miami Beach, Florida in violation of Title 18, U.S.C. § 1344, Title 18, U.S.C. § 1956, and Title 18, U.S.C. § 981.

37.     Having received the false and fraudulent loan applications and related documents submitted by Ballester and co-conspirators, the lenders approved the fraudulent loan requests submitted by the co-conspirators and sent the loan proceeds to the title company for distribution at the closing of the real estate transactions.

## REQUESTS FOR RELIEF

38.     The conduct and transactions described in paragraphs 21 to 30 constitute violations of Title 18, U.S.C. § 1344, which makes it an offense to knowingly execute, or attempt to execute, a scheme or artifice- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

39. The conduct and transactions described in paragraphs 21 to 30 constitute violations of Title 18, U.S.C. § 1956(a)(1)(B)(i), which makes it an offense to conduct or attempt to conduct a financial transaction with the proceeds of specified unlawful activity, to wit a violation of Title 18, U.S.C. § 1344, knowing that the property involved in the transactions constitute the proceeds of some form of unlawful activity, and knowing that the transactions were intended to conceal and disguise the source, ownership, nature, location and control of the proceeds of the specified unlawful activity.

40. The conduct and transactions described in paragraphs 21 to 30 constitute violations of Title 18, U.S.C. § 1957, which makes it an offense to knowingly engage or to attempt to engage in a monetary transaction, by, through or to a financial institution affecting interstate commerce, where the transaction involves criminally derived property having a value greater than $10,000.00, and where the property is in fact the proceeds of specified unlawful activity, to wit: Bank Fraud.

41. The conduct and transactions described in paragraphs 21 to 30, are predicate acts for a violation of Title 18, U.S.C. § 1956(h), which makes it an offense to conspire to commit any offense described in Sections 1956 and 1957.

**WHEREFORE**, by reason of these premises plaintiff, United States of America prays:

1. That process of warrant issue for the arrest of the defendant property;

2. That due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

3. That judgment be entered declaring the defendants to be the proceeds of U.S. offenses or property involved in or traceable to the proceeds of such offenses, and be condemned and

forfeited to the United States of America for disposition in accordance with law;

    4.    That this Court grants the United States of America such other relief the Court may deem just and proper, together with the costs and disbursements of this action; and

    5.    That any and all persons having any claim to the defendants be directed to file and serve their verified claims and answers as required by Rule G(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims, or suffer default thereof, and further requests that the Court declare the defendant property condemned and forfeit to the United States of America, and that Plaintiff have such other and further relief as may be just and proper.

Respectfully submitted,

WILFREDO FERRER
UNITED STATES ATTORNEY

BY: _____
RICHARD O.I. BROWN
ASSISTANT U.S. ATTORNEY
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Admin. Bar No. A5500257
Tel: (954) 660-5779
Fax: (954) 356-7610
Email: richard.brown@usdoj.gov
Attorney for Plaintiff United States

## VERIFICATION

I, Diane Jimenez, a Special Agent with United States Immigration and Customs Enforcement, Homeland Security Investigations, hereby declare, under the penalty of perjury as provided for by Title 28, U.S.C. § 1746, that the foregoing Complaint for Forfeiture *In Rem* is based on personal knowledge and information gained through interviews of witnesses and reports and information furnished to me by other law enforcement officers, and that facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this _____ day of January 2015.

_____
Diane Jimenez
SPECIAL AGENT
IMMIGRATION AND CUSTOMS ENFORCEMENT
HOMELAND SECURITY INVESTIGATIONS

**VERIFICATION**

I, Diane Jimenez, a Special Agent with United States Immigration and Customs Enforcement, Homeland Security Investigations, hereby declare, under the penalty of perjury as provided for by Title 28, U.S.C. § 1746, that the foregoing Complaint for Forfeiture *In Rem* is based on personal knowledge and information gained through interviews of witnesses and reports and information furnished to me by other law enforcement officers, and that facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this _2_ day of February 2015.

Diane Jimenez
SPECIAL AGENT
IMMIGRATION AND CUSTOMS ENFORCEMENT
HOMELAND SECURITY INVESTIGATIONS